BUSCH JEWELRY Co., INC., and Others, Plaintiffs, *v.* UNITED RETAIL EMPLOYEES' UNION, LOCAL 830, and Others, Defendants.

Supreme Court, Special Term, New York County, March 13, 1939.

*Scandrett, Tuttle & Chalaire,* for the plaintiffs.

*H. R. Korey,* for the majority employees.

*Samuel M. Sacher,* for the defendants.

COTILLO, J. Since May, 1938, the plaintiffs and defendant labor unions have been involved in a bitter labor dispute. Such dispute has taken on many ramifications. It has led to many protracted hearings. Two separate jury trials alleging violations of this court's decree against picketing have resulted in convictions carrying jail sentences and fines. In one of these trials the allegation made and proved was that a defendant union Local 144 had " faked " a labor dispute in order to find a pretext for picketing the Busch companies' stores. In this very action it is alleged that a member of defendant Local No. 830 was arrested and charged in the Magistrates' Court of violating our municipal ordinances by sticking " strike pasters " on the windows of stores in the vicinity of plaintiffs' stores.

On January 17, 1939, a strike which had been raging for eight months was called off. On the same date, following an application by plaintiffs for an extension of an injunction decree theretofore issued, permanently enjoining all picketing by defendants, and after this court had taken voluminous testimony involved in that application, plaintiffs and defendants agreed by stipulation to submit their controversy to a committee of arbitrators to be appointed by the court. (169 Misc. 854.) One of the questions submitted was whether the employees of the plaintiff companies were to be required to join the defendant unions in order to retain their jobs. At that time the employees themselves were not consulted, nor were they represented, except in so far as the defendants represented some of them before the court. Plaintiffs, defendants and the arbitrators proceeded on the assumption that the defendant unions were in fact actually authorized agents of a majority of plaintiffs' employees. Excepting for the employees' present complaint, the *modus operandi* for disposing of this troublesome litigation by means of arbitration would most assuredly have proved a peaceful and satisfactory solution. But both sides, as now appears from this motion, acted without knowledge of the decided feelings, opinions and desires in the matter of a substantial number of the Busch employees.

By motion dated February 9, 1939, a group of those employees moved to set aside or modify the award of the arbitrators in so far as it required all of the Busch employees to be or become members of the defendant unions in order to keep their jobs. The moving papers in support of that motion on their face indicate that those

employees constitute a majority of all Busch employees. In their opposing affidavit the defendant unions claim that they represent a majority of all the Busch employees.

If the employees objecting to the closed shop award of the arbitrators in fact represent a majority of the Busch employees, it is clear that plaintiff companies, by entering into such a closed shop agreement with defendant unions, pursuant to the arbitration award, would be guilty of an unfair labor practice under section 704, subdivision 5, of the Labor Law. If, on the other hand, the defendant unions represent a majority of the Busch employees, such a closed shop contract, pursuant to the arbitration award, is wholly lawful despite any difficulties it may impose upon these Busch employees who are not now members of the unions.

The defendant unions urge that this court is without jurisdiction to determine the questions of fact thus presented and that the motion made by the non-union employees must be denied without ascertaining whether or not such employees in fact constitute a majority of all the Busch employees. Two grounds are submitted for consideration: (1) That the Busch non-union employees are not "parties" to the arbitration and, therefore, have no standing before this court, and (2) that only the State Labor Relations Board has power to determine the factual question of whether or not defendant unions represent a majority of the employees involved.

The subject of the arbitration comprised various questions to be determined and to be included in a contract governing the terms and conditions of employment of all of the Busch employees. The defendant unions at best acted as agents of those employees. The principals were, at the time of the submission to arbitration, and are at this time, the employees themselves. The State Labor Relations Act has made the majority of employees one of the determining factors in collective bargaining. Under that act the majority have the right to designate agents or to bargain themselves, and their designation and their bargaining are made exclusive. No contract provision governing all the employees and entered into between the employer and the employees is valid unless the majority of his employees consent to it or authorize their agent to consent to it.

The defendant unions and the Busch companies, assuming for the moment that these petitioning employees in fact constitute the majority of Busch employees, have no power to enter into a contract covering all the employees, if the majority objects to the closed shop provisions. It would be absurd under these circumstances to hold that these employees are not parties where the result is an award imposing terms on them to which they do not agree,

and which terms in addition would violate an existing statute. The very question' that they raise is whether or not the defendant unions represent them and whether or not the unions' demand for a closed shop was in fact the demand of the majority.

Moreover, when the Arbitration Law speaks of " any party to a controversy " in sections 1462 and 1462-a of the Civil Practice Act, it is obvious that it refers not only to the parties who have participated in hearings or in the selection of arbitrators, but to all who are actually parties in interest so far as the subject-matter of arbitration is concerned. If this were not so, there would be no reason for the inclusion of section 1458, which provides for a remedy for a party who has *not* participated in the selection of arbitrators nor in any of the proceedings had before them, or one who has not made or been served with an application to compel arbitration. Under that section of the Civil Practice Act such a party is expressly entitled, even after the arbitration award has been handed down, to move to set aside that award on the ground that the submission was improper.

It is obvious that if these petitioning employees do in fact represent a majority of all of the Busch employees, and if they do not desire to become members of the defendant unions or to make membership in these unions a condition of employment, the submission of the closed shop question to the arbitrators was, in that limited aspect, an erroneous submission and one which neither the plaintiffs nor the defendant unions could affirmatively accomplish without violating section 704, subdivision 5, of the Labor Law.

We pass now to the defendant unions' contention that this court is without jurisdiction to determine whether they do in fact represent a majority of the Busch employees and that such question must be referred to the State Labor Relations Board.

Section 705 of the Labor Law provides in subdivision 1 that the majority representative of the employees shall be the exclusive representative for collective bargaining purposes, regardless of the manner in which majority status is determined. Subdivision 3 provides that whenever it is alleged by an employee or his representative that there is a question or controversy concerning the representation of employees, the Board is empowered to investigate that question and to *certify* the majority representative.

There is no question here of certification. This court is not called upon, nor does it intend to certify, either defendant unions or the committee of petitioning employees as the collective bargaining agent for all of the Busch employees. This court is now seeking merely to determine the question of whether or not there was a proper submission of the closed shop provision to arbitration. The

determination of that question turns on whether or not the defendant unions represent a majority of the employees. In the event they do not, it is clear that, regardless of the arbitration award, the Busch companies are powerless under the State Labor Relations Act to enter into a closed shop contract with them. If the defendant unions do in fact represent a majority, it is equally clear that under the terms of the submission to arbitration the Busch companies must enter into a closed shop contract with them.

Of value in the determination of this question is the following telegram sent to the arbitrators at the time of their hearings:

" We, the committee representing the Majority of Busch jewelry employees, urgently request that the Board of Arbitrators hear our protest against our joining Local 830 of the C.I.O. The committee has in its possession over 150 old employees' signatures on a petition that will be delivered February 2nd, A. M. It is imperative that an interview be granted as to further present our obligations.

" (signed)   SYLVIA BRAND

" Secretary."

Inasmuch as the board of arbitrators decided not to hear the workers, the question remains open and must be determined.

Since the court has full power, both as a court of general jurisdiction and expressly under sections 1458 and 1459 of the Civil Practice Act, to determine the propriety of a submission to arbitration and the propriety of an award, it has power to determine all questions of fact preliminary to that determination. This court, therefore, has the power to determine whether or not defendant unions represent a majority of all the Busch employees. Furthermore, this court has general equitable power to prevent the commission of an illegal act. (*DeHart* v. *Hatch*, [1875] 3 Hun, 375: *Matter of Stillwell*, [1893] 139 N. Y. 337; *People ex rel. Swift* v. *Luce*, [1912] 204 id. 478; *Busch Jewelry Co., Inc.*, v. *United Retail, etc., Union*, [1938] 168 Misc. 224.)

Uppermost in the mind of the court in suggesting the aforesaid arbitration was the peaceful solution of a long-drawn-out acrimonious series of litigations. Appeals and continued litigation seemed to this court to show no way out of an uneconomic and wasteful situation. Arbitration, pointing a path to better relations between employer and employee, was adopted as a sound vehicle. Through no fault of those involved, the very thing we tried to avoid will come to pass, unless the material facts are ascertained and the award of the arbitrators is either affirmed or modified. To permit the questioned portion of the award to stand, without ascertaining those facts, might well plunge both the Busch companies and their

employees into further prolonged and equally bitter litigation This should be avoided.

If the petitioning employees do in fact represent a majority of all the Busch employees, a contract forcing membership in defendant unions upon them is clearly illegal. (Labor Law, art. 20.) On that ground alone, and completely apart from any question of jurisdiction under the Arbitration Law, this court has full power to set aside the closed shop provision of the arbitration award.

The moving and replying affidavits have raised a serious question of fact as to whether or not the defendant unions do in fact represent a majority of the Busch employees. In order to determine that question of fact the court hereby refers the matter to John H. Mariano, Esq., to hear the workers employed by the plaintiff companies on the date hereof in the categories determined by the arbitrator as eligible to union membership, and to determine and report to this court whether or not the defendant unions represent a majority of such employees. Decision on the application to modify or set aside the arbitration award will be held in abeyance pending receipt of the referee's report. Having been assured by counsel for the unions and for the companies that no contract will be entered into until the final determination of this motion, a stay with respect thereto is unnecessary and the application for such stay is denied. Settle order.