Herbert D. Hamm, J.
This is a petition by an employee to compel her employer and her union to arbitrate.
The collective bargaining agreement between the employer and the union provided: £ ‘ All female employees with one *457 or more years seniority will be granted one (1) year’s leave of absence for pregnancy, but will be limited to one such leave during their employment with the Company. Both the Union and the Company must be notified in writing at the end of six (6) months as to whether or not the employee intends to return to work at the termination of the leave.”
An agreement dated December 6, 1956, was signed by the petitioner and by a committeeman of her union, a foreman, a superintendent and a representative of the personnel department as follows:
.“ The bearer S. Lembo #472 has been granted a Leave of Absence beginning on December 3, 1956 and ending on November 30,1957.
“ It is hereby agreed that you will notify the Company and the Union, in writing, on or before June 3, 1957 as to whether or not you intend to return to work at the expiration of this Leave.
“It is also agreed that if you fail to notify the Company and the Union as agreed, or fail to return to work on December 2, 1957, you voluntarily terminate your employment with this Company.”
The petitioner’s maternity leave commenced December 3, 1956. By letter postmarked June 12, 1957, she notified the employer of her intention to return to work at the termination of her leave. The employer refused to reinstate her on the ground that her notice was untimely.
The collective bargaining agreement further provided:
“ARTICLE II
“ Grievance Procedure and Arbitration
“ Section 1. It is the desire of both the Management and the Union that all complaints and disputes shall be handled as expeditiously and fairly as possible and to this end the following grievance procedure shall be followed:
“ Step No. 1. Any difference arising between employee and employer shall be first considered by the Union representative of the department in which the employee involved is employed, and the department supervisor.
“ Step No. 2. If the department representative and department supervisor fail to agree upon a decision agreeable to the Management and employee, the grievance shall be reduced to writing by the employee and delivered to the president of the Union, who shall deliver copies thereof to the office manager. The grievance shall then be considered by the president of the Union, the Union representative in the employee’s department, *458 the employee, the department supervisor, the office manager, his assistant, including the personnel manager.
“ Step No. 3. If a satisfactory solution is not reached under Step No. 2, the grievance shall be submitted to a Grievance Committee consisting of three (3) members of the Union, selected by the Union, and a committee of the Company who shall negotiate the settlement of the grievance.
“ Step No. 4. If the preceding steps fail to resolve the grievance it will be submitted to arbitration in accordance with established practice. Arbitration decisions will be final and binding on both the Company and the Union. The expense of arbitration shall be shared equally by the Company and the Union. ’ ’
In accordance with the collective bargaining agreement the grievance procedure proceeded to the so-called third step. An intramural hearing was held, at which the petitioner was present and was given an opportunity to be heard, and the grievance committee approved the action of the employer in terminating the petitioner’s employment. (The committee recommended re-employment without senority rights; the company was willing to accede to this request but the petitioner declined.)
The petitioner now offers proof allegedly tending to indicate disability prior to mailing her notice of intention and allegedly excusing noncompliance by reason of such disability and urges also that the notice should have been considered to have constituted substantial compliance with the collective bargaining agreement despite the interpretative agreement of December 6, 1956. The issues raised are not for Special Term now to decide. As the grievance has been determined and settled as between the employer and the union by the completion of “ Step No. 3 ”, neither the union nor the employer has a right to arbitration under “ Step No. 4 ”. There is now no dispute between the union and the employer and, in such circumstance, there is no provision for arbitration of the direct employer-employee dispute. The petition must be dismissed as there is nothing to arbitrate.
In Matter of Brettner (Canada Dry) (9 Misc 2d 725) the collective bargaining agreement, as here, contained the usual three-step grievance procedure antecedent to arbitration. Mr. Justice Christ stated (p. 727): “ Under the collective bargaining agreement it is the union which has the right to demand arbitration for alleged wrongful discharge of one of its members. Here, the union takes the position that in this case the discharge by the employer was justified and in so doing con *459 curs in the position taken by the other party to the collective bargaining agreement. The motion to compel arbitration is therefore denied.”
The petitioner belatedly urges that two of the union members of the grievance committee were biased. It is evident from her allegations that she had knowledge of the alleged prejudice prior to and at the hearing. She had an opportunity to raise the objection and omitted to do so. She may not remain silent to await a favorable determination and hold her objections in reserve as a potential means of escape from an adverse decision.
The petitioner also complains of collusion between the employer and the union for the fraudulent or deceitful purpose of mutual exchange of future favors. In the absence of adequate proof of such collusion, I do not reach the issue of whether an employee may compel arbitration when there has been collusive representation by the union (cf. Matter of Wile Sons & Co. [Messinger], 199 Misc. 654).
The petition is dismissed. However, I do not pass on the issue of whether the plaintiff may be able to state a cause of action in a direct action. The petitioner has annexed a summons to her petition and order to show cause. The summons names the respondent employer and the respondent union as defendants and refers to the petitioner as plaintiff. The petition contains 39 allegations. After the 39th appears the following:
1 ‘ AS AND FOB A SEP ABATE SECOND CAUSE OF ACTION, AND IN THE AUTEBNATIVE:
“ 40. Petitioner, in the alternative, in her capacity as a plaintiff, realleges each and every allegation contained in the paragraphs of the Petition herein numbered ‘ 2 ’ through and including ‘ 38 ’ as her complaint herein against the Respondent Company and the Respondent Union in their respective capacities as defendants, and as a cause of action against said defendants, and for said purposes annexes a Summons hereto.
“ 41. That the plaintiff’s damages are indefinite and uncertain.
‘ ‘ 42. That by reason of all the foregoing the plaintiff has sustained and will continue to sustain irreparable injury, and that she has no adequate remedy at law. ’ ’
These allegations are followed by a prayer for relief. The complaint is not in the form contemplated by section 241 of the Civil Practice Act in that it does not contain a plain and concise statement of the material facts on which the petitioner as plaintiff relies. Moreover, the complaint does not *460 comply with rule 90 of the Rules of Civil Practice (cf. Baldwin v. Hegeman Farms Corp., 154 Misc. 285, as to incorporation in an amended complaint of allegations in a prior superseded complaint). Excluding the provisions erroneously sought to be incorporated the complaint fails to state a cause of action.
The purported complaint is dismissed with leave to serve an amended complaint within 20 days after service of a copy of the order to be entered hereon with notice of entry.
Submit order to Troy on three days’ notice. All papers will be forwarded with the signed order.